NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0136n.06

No. 12-5294

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Feb 05, 2013**
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF TENNESSEE |
| JOHNNY E. HATCHER, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE: COOK, WHITE, and DONALD, Circuit Judges.

PER CURIAM. Johnny E. Hatcher appeals his conviction and sentence for marijuana conspiracy. As set forth below, we affirm.

A federal grand jury charged Hatcher and Donnie Harmon with conspiracy to distribute and possess with intent to distribute 1000 kilograms or more of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846. Hatcher proceeded to trial; Harmon pleaded guilty to a lesser included offense and testified at Hatcher's trial. During deliberations, the district court granted the jury's request to review Harmon's trial testimony. After listening to Harmon's testimony on direct examination, the jury declined to listen to his cross-examination testimony. The jury subsequently returned a guilty verdict against Hatcher.

Prior to trial, the government filed an information pursuant to 21 U.S.C. § 851, alleging that Hatcher had a prior felony conviction for possession of cocaine that subjected him to the enhanced penalty provisions of 21 U.S.C. § 841(b)(1)(A). At sentencing, Hatcher invoked his Fifth Amendment right against self-incrimination rather than affirming or denying the prior conviction. The district court deemed Hatcher's invocation of his Fifth Amendment right as a denial of the prior conviction, ordered him to respond to the government's information, and continued the sentencing hearing. In response to the information, Hatcher asserted that the government had failed to prove beyond a reasonable doubt that he was the individual charged in the alleged prior conviction. When the parties reconvened for sentencing, the district court conducted an evidentiary hearing, concluded that the government had established Hatcher's prior conviction beyond a reasonable doubt, and used that conviction to enhance his sentence, imposing the statutory mandatory minimum of 240 months of imprisonment.

In this timely appeal, Hatcher first argues that the district court erred in allowing the deliberating jury to listen to Harmon's testimony on direct examination without playing the rest of his testimony. We review the district court's decision to allow a deliberating jury to review trial testimony for abuse of discretion. *United States v. Padin*, 787 F.2d 1071, 1076 (6th Cir. 1986). We have recognized "two inherent dangers" in permitting a jury to review trial testimony during its deliberations: (1) "undue emphasis may be accorded such testimony," and (2) "the limited testimony that is reviewed may be taken out of context by the jury." *Id*. To alleviate these concerns, the district court, whenever it grants a deliberating jury's request to review trial testimony, "must give

an instruction cautioning the jury on the proper use of that testimony." *United States v. Rodgers*, 109

F.3d 1138, 1145 (6th Cir. 1997).

Here, the jury requested the transcript of Harmon's testimony. The district court advised the

jury that there was a recording but no transcript of Harmon's testimony. Before playing the

recording, the district court instructed the jury: "Please be advised, however, that you must consider

all the evidence that's been presented during the course of the trial, and you must not single out any

particular part of the evidence to the exclusion of other evidence that was admitted during the course

of the trial." The district court played the recording of Harmon's direct examination testimony. The

jury sent the district court a note stating, "We don't need to hear cross-examination if it is

permissible not to do so." In response to the jury's note, the district court asked, "And I'm not sure,

Mr. Foreperson, if that means that you've heard enough or do you wish to continue the tape?" The

foreperson replied, "Yes, your Honor, we've heard enough." The district court polled the jury; no

juror indicated a wish to hear the rest of Harmon's testimony.

Hatcher argues that the following facts indicate that the jury's decision "hinged" on

Harmon's testimony: (1) after listening to Harmon's testimony on direct examination, the jury sent

a note declining to hear his cross-examination testimony; (2) the jury requested only the testimony

of Harmon, the sole co-defendant in the case; and (3) the jury returned a verdict just twenty-five

minutes after listening to Harmon's testimony. However, the district court's instruction addressed

Hatcher's concern about the jury placing undue emphasis on Harmon's testimony, and we presume

that the jury followed that instruction. *See United States v. Tines*, 70 F.3d 891, 898 (6th Cir. 1995).

Hatcher further argues that the jury could have taken Harmon's testimony out of context because the district court did not play all of his testimony. The district court did not abuse its discretion in complying with the jury's specific request not to play Harmon's cross-examination testimony. *See Padin*, 787 F.2d at 1076–77.

Hatcher next contends that the government failed to prove beyond a reasonable doubt that he had a prior felony drug conviction as required to enhance his sentence. *See* 21 U.S.C. § 851(c)(1). In the sentencing context, we review the district court's factual findings for clear error and its legal determinations de novo. *United States v. Canestraro*, 282 F.3d 427, 431 (6th Cir. 2002).

In the information filed pursuant to 21 U.S.C. § 851, the government alleged that Hatcher was convicted on February 28, 1989, and sentenced on May 17, 1989, in the 22nd Judicial District Court, Division D, Parish of Saint Tammany, Louisiana for possessing cocaine on February 6, 1988. At the sentencing hearing, Officer Jerry Orr testified that Hatcher told him that he had been in prison in Louisiana. Officer Orr requested certified copies of documents from the Louisiana case, which were entered into evidence. Along with the state-court documents, Officer Orr received two fingerprint cards. Officer Orr gave the two fingerprint cards from Louisiana and the fingerprint card from Hatcher's arrest in the instant case to Officer Tim Schade, a certified latent print examiner. Officer Schade testified that he compared the three fingerprint cards and determined that all three cards identified the same person. Officer Schade's finding was verified by another certified latent print examiner. The three fingerprint cards, which were entered into evidence, listed the same name, "Johnny E. Hatcher" or "Johnny Edward Hatcher," and the same social security number. The

birthdates listed on the fingerprint cards were off by six days, the Louisiana cards listing May 28, 1951 and the federal card listing May 22, 1951.

Hatcher contends that there was no evidence linking the fingerprint cards from Louisiana to the possession-of-cocaine conviction at issue. In addition to Hatcher's name appearing on the fingerprint cards and the state-court documents, the government presented evidence that the fingerprint exemplars from Louisiana were taken on or about February 6, 1988, the date of the possession of cocaine offense; that one of the fingerprint cards indicated that Hatcher was being charged with possession of cocaine, among other offenses; and that the fingerprint cards were provided by the State of Louisiana with the certified copies of the state-court documents relating to the conviction of possession of cocaine. Based on the evidentiary record, the district court properly concluded that the government established Hatcher's prior conviction beyond a reasonable doubt.

According to Hatcher, the government presented scientifically weak fingerprint testimony. When presented with expert scientific testimony, the district court must make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1993). Officer Schade was questioned extensively at the sentencing hearing about his credentials and the ACE-V method for comparing and identifying fingerprints. Finding that Officer Schade was competent to testify as an expert witness, the district court stated: "His credentials have been established through his testimony, and pursuant to the United States Supreme Court's decision in . . . *Daubert* . . . his testimony is both relevant and reliable and his testimony will be received." Hatcher has failed to establish that the

district court abused its discretion in accepting Officer Schade's testimony. *See United States v. Watkins*, 450 F. App'x 511, 515–16 (6th Cir. 2011) (rejecting the defendant's argument regarding the scientific validity of the ACE-V method); *United States v. Pena*, 586 F.3d 105, 110 (1st Cir. 2009) ("Numerous courts have found expert testimony on fingerprint identification based on the ACE-V method to be sufficiently reliable under *Daubert*.") (citing cases).

For the foregoing reasons, we affirm Hatcher's conviction and sentence.